**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RODNEY C. GROGAN, JR.

                             Plaintiff,

       v.

CAROLYN M. COLVIN,
ACTING  COMMISSIONER OF SOCIAL
SECURITY,

                       Defendant.

6:16-CV-240
(CFH)

**APPEARANCES:**                        **OF COUNSEL:**

Rodney C. Grogan, Jr.
8247 Old Floyd Road
Rome, New York 13440
Plaintiff pro se

Social Security Administration         GRAHAM MORRISON, ESQ.
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for defendant

**CHRISTIAN F. HUMMEL,**
**U.S. Magistrate Judge**

### MEMORANDUM-DECISION AND ORDER

    Plaintiff <u>pro</u> <u>se</u> Rodney C. Grogan Jr. brings this action pursuant to 42 U.S.C. section

405 (g) seeking review of the decision by the acting Commissioner of Social Security

("Commissioner" or "defendant") denying his application for disability insurance benefits.

Dkt. No. 1. ("Compl.").[1] Plaintiff moves for a finding of disability and Commissioner cross moves for judgment on the pleadings. Dkt. Nos. 12, 13. For the following reasons, the determination of the Commissioner is affirmed.

## I.    Background[2]

Plaintiff was born on December 24, 1971. Social Security Administrative Record/ Transcript ("T.") at 27.[3] Plaintiff graduated from high school where he took regular education courses. Id. at 29. Plaintiff resides with his brother in a single-family residence. Id.at 29. Plaintiff cleans the home and does the laundry. Id at 36. Plaintiff's brother does all of the grocery shopping and cooking. Id. at 36. Plaintiff last worked at Mohawk Electro Technologies, Inc. on April 10, 2012. Id. at 29-30. Plaintiff was employed there for approximately 20 years. Id. at 30. He began his employment there as an assembler involved in building components which were placed on circuit boards which were used in building radios for the military. Id. at 31. Plaintiff worked his way up to become a supervisor of 20 to 40 people. Id. at 30-31. As a supervisor, plaintiff trained, hired, and fired employees. Id. at 30. In his supervisory role, plaintiff spent thirty percent of the workday on his feet. Id. at 31. Plaintiff was terminated from his position as a result of downsizing. Id. at 32. If the company had not downsized, he would have continued to work. Id. Plaintiff has not been employed since he was terminated. Id.

---

[1] The parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. section 636 (c), Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 73, N.D.N.Y. Local Rule 72.2 (b), and General Order 18. See Dkt. No. 4.

[2]   Copies of unpublished decisions cited within this Memorandum-Decision and Order have been provided to plaintiff.

[3] The page numbers for citations to the Social Security Administrative Record/Transcript refer to the pagination provided by Social Security upon submission to the Court, not the header numbers generated by CM/ECF.

On March 14, 2013, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits alleging a disability beginning on January 5, 2012. T. at 142-43. The claim was denied on June 18, 2013. Id. at 45-53. Plaintiff filed a written request for a hearing. Id. at 67-68. A hearing was held before Administrative Law Judge ("ALJ") Robert E. Gale on May 28, 2014. Id. at 22-44. On November 6, 2014, the ALJ issued a decision denying plaintiff's application. Id. at 9-16. Plaintiff's timely request for review by the Appeals Council was denied, making the ALJ's finding the final determination of the Commissioner. Id. at 1-4. Plaintiff commenced this action on February 29, 2016. See Compl.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review

. . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable

factfinder *would have to conclude otherwise*." Brault v. Soc. Sec. Admin., Comm'r, 683

F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted). Where there is

reasonable doubt as to whether the Commissioner applied the proper legal standards,

the decision should not be affirmed even though the ultimate conclusion reached is

arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145,

148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

However, if the correct legal standards were applied and the ALJ's finding is supported

by substantial evidence, such finding must be sustained, "even where substantial

evidence may support the plaintiff's position and despite that the court's independent

analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan,

805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).


## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit

. . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous

period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable

impairment is an affliction that is so severe that it renders an individual unable to

continue with his or her previous work or any other employment that may be

available to him or her based on his or her age, education, and work experience. Id.

§ 423(d)(2)(A). Such an impairment must be supported by "medically acceptable

clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. DeChirico v.

Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner where the record contains substantial support for the ALJ's decision. See Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). The Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

## C.  ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since April 10, 2012, the alleged

onset date.  T. at 11.  The ALJ found in step two that plaintiff had the severe impairment

of Crohn's disease.  Id.  At step three, the ALJ determined that plaintiff did not have an

impairment or combination of impairments that met or medically equated to the severity

of one of the listed impairments in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R.

§§ 404.1520(d), 404.1525, 404.1526).  Id. at 12. The ALJ then concluded that plaintiff

has the residual functional capacity ("RFC") to perform the full range of light work as

defined in 20 C.F.R. § 404.1567(b).  Id.

At step four, the ALJ determined that plaintiff is capable of performing past relevant

work as a supervisor of electronics production (DOT #726.130-010).  T at 14.  The ALJ

concluded that plaintiff's past work as a supervisor of electronics production does not

require the performance of work related activities which are precluded by plaintiff's

residual functional capacity.  Id.  Therefore, the ALJ determined that plaintiff "has not

been under a disability, as defined in the Social Security Act, from April 10, 2012,

through the date of this decision.  Id. at 15.


### D. Arguments

Plaintiff contends that the Commissioner's decision is not based on substantial

evidence because: (1) the ALJ failed to obtain the testimony of a vocational expert;

(2) the ALJ erred in not finding plaintiff's Crohn's disease, reflux disease, osteoarthritis,

joint pain and skin cancer to be severe impairments; (3) the ALJ failed to properly

assess the medical opinions; (4) the ALJ failed to apply the treating source rule to Nurse

Practitioner Deanna Brady; (5) the ALJ failed to perform a function-by-function analysis;

and (6) the ALJ erred in failing to consider his good work history in assessing his

credibility. <u>See</u> <u>generally</u> Dkt. No. 12. Defendant first argues that because the ALJ properly determined that the plaintiff has the ability to perform his past work, the burden never shifted to the Commissioner; thus, it was not necessary for the ALJ to elicit expert vocational testimony. Defendant next argues that the ALJ provided valid reasoning at step two for determining that plaintiff's osteoarthritis was not a severe impairment. Next, defendant contends that the ALJ properly applied the treating source rule in evaluating the testimony of nurse practitioner Deanna Brady. Lastly, defendant argues that it was not necessary for the ALJ to perform a function-by-function analysis as the ALJ's rationale could be gleaned from his decision. <u>See</u> <u>generally</u> Dkt. No. 13.

### 1. Vocational Expert Testimony

Plaintiff contends that the ALJ erred in failing to call a vocational expert. Dkt. No. 12 at 8-11.[4] Plaintiff argues that "[t]he vocational expert['s] personal attendance at the [a]dministrative hearing is [an] important part of a fair [and] impartial hearing on the claimants work related limitations." <u>Id.</u> at 10. Defendant contends that, once the ALJ determined at step four that plaintiff was not disabled, he was not required to proceed to step five to consider the vocational factors of age, education, and work experience. Dkt. No. 13 at 6 (citing 20 C.F.R. §§ 404.1520(b), 404.1560). Thus, defendant argues at step four, the burden was on plaintiff to show an inability to perform his past relevant work. Dkt. No. 13 at 6.

Plaintiff bears the burden of proof to establish each of the first four steps. <u>DeChirico</u> <u>v. Callahan</u>, 134 F.3d 1177, 1179-80 (2d Cir. 1988). "A disability claimant bears the

---

[4] When citing to plaintiff's brief and other documents within the Record (with the exception of the Social Security Administrative Transcript/Record), the Court uses the page numbers generated by CM/ECF.

burden of proving that she cannot return to her past relevant work, either as it is performed in the national economy, or as she actually performed." Peryea v. Comm'r of Soc. Sec., No. 5:13-CV-0173 (GTS/TWD), 2014 WL 4105295, at *10 (N.D.N.Y. Aug. 20, 2014) (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)) (additional citation omitted). If plaintiff satisfies his burden of proof on steps one to four, the burden shifts to the Commissioner to prove, at step 5, that the plaintiff is still able to engage in gainful employment somewhere. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Stratton v. Colvin, 51 F. Supp. 3d 212, 216 (N.D.N.Y. 2014).

Here, the ALJ determined that plaintiff could perform light work without any limitations. T. at 12-14. In reaching that conclusion, the ALJ gave great weight to the opinions of Dr. Robert Pavelock and consultative examiner Dr. Tanya Perkins-Mwantuali. See id. On April 19, 2011, Dr. Pavelock examined plaintiff and noted that he was on Remicade and "doing extremely well." Id. at 323. When Dr. Pavelock examined plaintiff on April 23, 2013, he noted that plaintiff could stand and/or walk without limitation. Id. at 274-76. Dr. Pavelock found no limitations on plaintiff's ability to sit. Id at 271. Dr. Pavelock concluded that plaintiff could occasionally lift and carry 25 pounds, and could push and pull a maximum 40 pounds. Id.

On June 10, 2013, plaintiff was seen by Dr. Perkins-Mwantuali for an internal medicine consultative examination. T. at 273-76. Plaintiff advised Dr. Perkins-Mwantuali that he could walk for four miles and stand for twenty minutes before back pain required him to sit. Id. at 273. On examination, Dr. Perkins-Mwantuali found that plaintiff's "cervical spine shows full flexion, extension, lateral flexion and full rotary movements bilaterally." Id. at 275. He further noted that plaintiff had full range of

motion of the hips, knees, and ankles bilaterally.  Id. at 275.  Dr. Perkins-Mwantuali

found no objective limitations on examination.  Id. at 276.

Here, the ALJ's determination that plaintiff could perform light work without any

additional limitations is, in view of the medical records of Dr. Pavelock and Dr. Perkins-

Mwantuali, supported by substantial medical evidence in the record.  "[T]he mere

existence of a nonexertional impairment does not automatically require the production

of a vocational expert nor preclude reliance on the guidelines."  Bapp v. Bowen, 802

F.2d 601, 603 (2d Cir. 1986).  A vocational expert is only needed where a plaintiff meets

the burden at step four and shows that he or she cannot perform his or her past relevant

work.  Wells v. Colvin, 87 F. Supp. 3d 421, 436-37 (W.D.N.Y. 2015).  As the objective

medical evidence demonstrates that plaintiff's work capacity was not significantly

diminished by non-exertional limitations, the testimony of a vocational expert was not

required.  Vargas v. Astrue, No. 09 civ. 6606 (BSJ/DF), 2011 WL 9518014, at *14

(S.D.N.Y. Nov. 8, 2011).  Accordingly, the ALJ did not err in failing to obtain the

testimony of a vocational expert.


**2. Severity**

Plaintiff contends that the ALJ erred at step two "when he failed to find multiple

ailments not only Crohn's Disease but Osteoarthritis to be a severe impairment, and

Reflux Disease, Skin Cancer. (SSR 85-28 and 20 C.F.R. § 404.1520(c)."  Dkt. No. 12 at

10.  Defendant contends that the ALJ provided proper reasoning at step two for his

determination that plaintiff's osteoarthritis is not a severe impairment.  Dkt. No. 13 at 7.

Defendant did not address plaintiff's arguments regarding reflux disease and cancer in

her brief.  See generally Dkt. Nos. 12, 13.  Defendant argues that any error at step two is harmless as the ALJ continued with the sequential analysis.  Dkt. No. 13 at 8.

At step two, the ALJ found that plaintiff has a severe impairment of Crohn's disease.  T. at 11.  As the Crohn's disease causes more than minimal limitations in plaintiff's ability to perform basic work activities, the ALJ determined that it is a severe impairment.  Id.  The ALJ specifically addressed plaintiff's allegations of joint pain.  Id. (citing Exhs. 2E at 2, 19E at 1).  The ALJ noted that at the consultative examination, plaintiff demonstrated full range of motion of the ankles knees, hips and back.  T. at 11. The ALJ also cited to consultative examiner Dr. Perkins-Mwantuali's report that that plaintiff's "joints were stable and non-tender, and he had a 5/5 strength bilaterally in the upper and lower extremities."  Id. at 11-12.  Further, on examination, plaintiff had full range of motion in his ankles, knees, hip, and back; a normal exam of the back, hips, knees, feet, and ankles; and plaintiff walked with a normal gait without an assistive device.  Id.  The ALJ referred to the fact that plaintiff told Dr. Perkins-Mwantuali that he could walk four miles, and that he could cook and clean daily, do laundry, maintain his personal care, watch television, listen to the radio, read, and exercise.  Id. at 13.  The record also contains an examination by Dr. Smiley, one of plaintiff's treating physicians, who found "no synovitis in the small joints of the hand, wrists, elbows, shoulders.  In the lower extremity there was a normal exam of the low back both hips both knees both feet and both ankles the patient walked with a normal gait without any assistive device."  Id. at 354.  The ALJ further noted that, at the hearing, plaintiff testified that he was able to "lift fifty pounds once and twenty-five pounds on an occasional basis."  Id. at 13.

Based on his review of the medical records, and plaintiff's hearing testimony, the ALJ determined that plaintiff's joint pain or osteoarthritis is not a severe impairment because it "does not cause more than minimal limitations in the claimant's ability to perform basic work activities." T. at 12. The Court agrees with the Commissioner that there is substantial evidence in the record, in the form of objective medical evidence and plaintiff's own reports, which supports the finding of the ALJ that plaintiff's osteoarthritis is not a severe impairment. Accordingly, the ALJ committed no error in concluding that plaintiff's joint pain/osteoarthritis to be nonsevere.

Plaintiff next contends that the ALJ erred in not finding his reflux disease is a severe impairment. Dkt. No. 12. It is noteworthy that, while plaintiff raises this objection to the decision of the ALJ, in his brief he fails to make any reference to any medical record or hearing testimony which supports his position.[5] The Court has carefully reviewed the transcript of the administrative hearing. See T. at 22-44. The Court has been unable to find any testimony to support plaintiff's claim that his reflux disease causes more than minimal impact on his ability to perform basic work activities. Id. Plaintiff testified, after identifying his impairments as Crohn's disease and osteoarthritis that he did not have any other medical condition which is significant because it affects his ability to work in a regular, full-time basis. Id. at 32-34. Further, the Court has reviewed closely the medical records which were received in evidence at the time of plaintiff's hearing before the ALJ. Id. at 245-548. A March 1, 2012 treatment record from the Mohawk Valley Endoscopy Center notes that plaintiff should "follow an antireflux regimen indefinitely." Id. at 294. The Faxton-St. Luke's Healthcare medical records from July 9, 2012 indicate that plaintiff came in for worsening reflux. Id. at 249. A physical examination was

---

[5] Defendant fails to address this issue in her memorandum of law. Dkt. No. 13.

conducted which indicated that plaintiff was in no acute distress.  Id.  at 251.  Plaintiff

was directed to try Nexium, an over-the-counter acid reflux medication, to address his

reflux.  Id. at 252.  Beyond these spare medical records where plaintiff sought reflux

treatment and providers recommended conservative remedies, there is nothing in

plaintiff's medical records, or in the transcript of the hearing testimony, which supports

plaintiff's claim that his reflux disease constitutes a severe impairment.

Plaintiff next appears to contend that his skin cancer constitutes a severe impairment

and that the ALJ improperly failed to consider this impairment.  Dkt. No. 12 at 7, 10, 19.

First, plaintiff makes merely a passing reference to skin cancer in his brief.  Id.  Plaintiff

alleges that the Remicade which he takes for his Crohn's disease "can cause the

cancers that [he] has experienced."  Id. at 15.  Plaintiff fails to point to anything in the

record which supports that claim.  Further, although plaintiff raises this issue, he does

not point to any medical record or trial testimony which supports his position that skin

cancer causes any limitations, let alone limitations that cause more than a mild impact

on his ability to perform basic work activities.  See generally Dkt. No. 12.  In the

absence of such evidence plaintiff has failed to meet his burden of proving that his skin

cancer constitutes a severe impairment.  42 U.S.C. § 423(d)(5)(A).


### 3. Weighing Medical Testimony

### a. Dr. Robert Pavelock and Dr. Tanya Perkins-Mwantuali

Plaintiff alleges that the ALJ erred in according "great weight" to the opinions of

treating gastroenterologist Dr. Robert Pavelock, and consultative examiner Dr. Tanya

Perkins-Mwantuali.  Dkt. No. 12 at 15-16.  Plaintiff contends that Dr. Pavelock's

opinions are incomplete as he refused to complete the proper disability forms. Id. at 15.

Plaintiff further contends that should also have given less weight to Dr. Pavelock's opinion as he "was avoiding the fact he kept the claimant on the Crohn's medication Remicade infusions for eleven years when that in fact is to [sic] long of a time period, adding that the claimant had allergies to this medication and being on this medication can cause the cancers the claimant has experienced." Id. at 15. In addition, plaintiff argues that Dr. Pavelock's treatment of plaintiff, as well as Dr. Perkins-Mwantuali's consultative examination occurred over year prior to the hearing before the ALJ. Id. As such, plaintiff contends those sources should not be considered in addressing the plaintiff's RFC, and that the ALJ as required to re-contact Dr. Pavelock to obtain an RFC. Id.

Although an "'ALJ cannot arbitrarily substitute his own judgment for competent medical opinion' he remains 'free to choose between properly submitted medical opinions' and to rely on those opinions in reaching his disability determination." Kessler v. Colvin, 48 F. Supp. 3d 578, 597 (S.D.N.Y. 2014) (internal citation omitted). Although a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and not inconsistent with other substantial evidence in the record. Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d). Where the treating physician's opinion is contradicted by other substantial evidence, the ALJ is not required to give the opinion controlling weight. Halloran v. Barnhart, 362 F.3d 28, 32-33 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that the report is rejected. Id. An ALJ

may not arbitrarily substitute his or her own judgment for competent medical opinion.

Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).  As the Second Circuit set forth,

> [w]hen controlling weight is not given to a treating physician's assessment, the ALJ must consider the following factors to determine the weight to give the opinion: (1) the length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence in support of the opinion; (4) the opinion's consistency with the record as a whole; (5) whether the opinion is that of a specialist; and (6) any other relevant factors.

Monroe v. Comm'r of Soc. Sec., No. 16-1042-CV, __ F. App'x __, 2017 WL 213363, at

*2 (2d Cir. Jan. 18, 2017) (summary order) (citing 20 C.F.R. § 404.1527(c));

McBrayer v. Sec. Health & Human Servs., 712 F.2d 795, 799 (2d Cir. 1983) (additional

citation omitted).

Here, the ALJ gave great weight to the opinions of Dr. Pavelock, plaintiff's

treating physician.  T. at 12-14.  The ALJ found Dr. Pavelock's opinions regarding

plaintiff's limitations to be "consistent with treatment notes" and diagnostic testing.  Id.

at 12-13.  In his decision, the ALJ specifically noted that in April 2013, Dr. Pavelock

found that plaintiff can "occasionally lift/carry twenty-five pounds; stand/walk without

limitation; and push/pull up to forty pounds."  Id. at 13.  He further opined that plaintiff

did not have any other limitations or conditions which were significant to his recovery.

Id.

Dr. Pavelock's findings are consistent with those of the consultative examiner

Dr.Perkins-Mwantuali.  An ALJ is entitled to rely upon the opinions of an examining

state agency medical consultant as "such consultants are deemed to be qualified

experts in the field of social security disability."  House v. Comm'r of Soc. Sec., 32 F.

Supp. 3d 138,151-52 (N.D.N.Y. 2012).  Based on her June 10, 2013 examination of

plaintiff, Dr. Perkins-Mwantuali noted that plaintiff cooks, cleans, and does laundry

seven times a week.  T. at 274.  He showers daily and is able to dress himself.  <u>Id.</u>  He

regularly reads and exercises.  <u>Id.</u>  Dr. Perkins-Mwantuali found that plaintiff's gait was

normal and he walked without an assistive device.  <u>Id.</u>  He was able to get on and off

the examination table without assistance.  <u>Id.</u>  On examination, Dr. Perkins-Mwantuali

found that plaintiff's "cervical spine shows full flexion, extension, lateral flexion and full

rotary movements bilaterally."  <u>Id.</u> at 275.  Plaintiff had full range of motion in the

shoulders, elbows, forearms, wrists, fingers, hips, knees and ankles bilaterally.  <u>Id.</u>  Dr.

Perkins-Mwantuali found that plaintiff's Crohn's disease is controlled by medication.  <u>Id</u>.

at 276.  Dr. Perkins-Mwantuali noted "no objective limitations found on exam."  <u>Id.</u>

   The ALJ's decision to give great weight to the opinions of Dr. Pavelock and Dr.

Perkins-Mwantuali is supported by substantial medical evidence in the record.  Each of

the doctors' opinions is based upon their observations and diagnostic testing which is

contained in the medical record.  It is the responsibility of the ALJ to assess the

credibility of witnesses and to determine what weight to give to their testimony.

<u>Balsamo v. Chater</u>, 142 F.3d 75, 81 (2d Cir. 1998).  Here, the ALJ assessed all of the

medical testimony and properly weighed that evidence in deciding to give great weight

to the opinions of Dr. Pavelock and Dr. Perkins-Mwantuali.

   Insofar as plaintiff argues that the ALJ should not have considered Dr. Pavelock's

opinion because it was from over a year ago, and then, contradictorily suggests that the

ALJ as required to contact Dr. Pavelock to obtain a "complete opinion about the

claimant's RFC," an ALJ is only required to re-contact a medical source when there is a

gap in the medical record. <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Plaintiff offers no argument, nor any supporting evidence, that his conditions have substantially changed beyond the medical opinions and treatment notes contained within the record. Thus, there is no evidence of an "obvious gap" in the medical record that would preclude an informed decision. <u>Id.</u>

Finally, plaintiff's opinion as to whether it was proper to continue him on Remicade for a substantial period of time despite apparent significant medical risks is little more than disagreement with Dr. Pavelock's treatment recommendations, which is not a relevant consideration in determining the weight to accord to a physician's opinion. <u>See</u> 20 C.F.R. § 404.1527(c).

### b. Deanna Brady, MS, FNP-C

Plaintiff contends that the ALJ did not give proper weight to the opinion of Deanna Brady, MS, FNP-C. Dkt. No. 12 at 12. The ALJ gave "little weight" to the opinion of Ms. Brady. T. at 14.

Ms. Brady completed a medical source statement on May 2, 2014. T. at 370-72. She opined that plaintiff has limitations due to pain from his Crohn's disease and arthritis. <u>Id.</u> at 372. Ms. Brady found that plaintiff can sit for thirty minutes at one time and stand for forty-five minutes at one time. <u>Id.</u> at 370. She provided that plaintiff would be required to be employed in position which would allow him to sit, stand, or walk at any time. <u>Id.</u> Ms. Brady concluded that plaintiff would be able to occasionally lift less than 10 pounds and rarely lift 10 pounds. <u>Id.</u> at 371. He would never be able to lift

more than 20 pounds.  Id.  Plaintiff would rarely be able to stoop, climb ladders or climb stairs.  Id.  He would never be able to crouch or squat.  Id.

As a result of these impairments, Ms. Brady concluded that plaintiff is going to experience "good days" and "bad days."  T. at 372.  She opined that plaintiff symptoms are severe enough that they will constantly interfere with the attention and concentration required to perform even simple work tasks.  Id.  Ms. Brady concluded that plaintiff would miss approximate four days of work every month as a result of his impairments and necessary medical treatment.  Id.  Ms. Brady found plaintiff's prognosis to be "guarded."  Id. at 370.

The ALJ determined that Ms. Brady's conclusions were unsupported by plaintiff's medical records.  T. at 14.  He determined that her conclusion that plaintiff's arthritis is a severe impairment is based on a misreading of plaintiff's treatment notes.  Id.  While Ms. Brady cited issues with plaintiffs Crohn's disease, and the resultant pain, the ALJ found the Crohn's disease was controlled by medication and noted the plaintiff did not claim any limitations in his ability to sit, stand and walk.  Id.  The ALJ found that plaintiff was able to maintain an extensive list of daily activities which are in direct contrast to the limitations found by Ms. Brady.  Id.  The ALJ specifically referenced a May 7, 2014 medical record from Dr. Alan Smiley which indicates in the history section that that plaintiff "could do all of his activities of daily living."  T. at 288.

First, the Court notes that while Brady is not an "acceptable medical source" under the regulations, her opinion must be evaluated.  Colon v. Astrue, No.11-CV-210A, WL 2245457, at *10 (W.D.N.Y. May 21, 2013).  In his decision, the ALJ properly considered Brady's opinion along with plaintiff's medical records.  T. at 14.  The ALJ observed that

Ms. Brady acts as plaintiff's "primary care provider" but noted that she "does not have the professional expertise and specialization of Dr. Pavelock." Id. The ALJ noted that Ms. Brady's opinions are inconsistent with the medical evidence and with the opinions of Dr. Pavelock and Dr. Perkins-Mwantuali and that she does not have the "professional expertise and specialization of Dr. Pavelock." Id.

Where the opinion of an unacceptable medical source conflicts with, or is unsupported by, objective medical evidence, an ALJ may properly decline to accord it weight. See generally Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008). Here, the Court finds that the ALJ provided the required reasoning for giving Ms. Brady's opinion little weight. The ALJ explained his assessment of the weight provided to Ms. Brady's opinion in great detail. T. at 14. He provided a detailed review of Ms. Brady's opinion and concluded that the medical opinions and objective medical evidence of record did not support the substantial limitations suggested by Ms. Brady. Id. The ALJ observed that plaintiff's treatment notes did not support Ms. Brady's limitations. Id. The ALJ referred to the fact that plaintiff reported no limitations in his abilities to sit, stand, or walk, and has been able to maintain "an extensive list of daily activities that is in direct contrast to nurse practitioner Brady's limitations." Id. The ALJ observed that "one of the more recent reports in the record" explicitly stated that plaintiff could "do all his activities of daily living." Id.

The Court agrees that substantial evidence contradicts Ms. Brady's findings of significant limitations. Plaintiff himself testified being capable of greater abilities than those opined by Ms. Brady – he stated that he could lift fifty pounds at one time if he "really, really tried," and twenty pounds occasionally. T. at 13, 40. He reported that he

is able to clean; cook himself meals; take care of his personal care; interact with family, friends, and neighbors; walk a quarter to a half of a mile; and does not use any assistive devices.  Id. at 29, 37, 38.  Further, he lost his job not due to his disability, but because he was terminated.  Id. at 32.  Although he can drive, he does not because he cannot afford auto insurance.  Id. at 36-37.  Moreover, despite the fact that Ms. Brady provided primary care to plaintiff, the ALJ did not commit err by failing to give her opinion less weight because she is not an acceptable medical source.  See Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008).

Accordingly, the Court finds that the ALJ did not commit error and according little weight to Ms. Brady's findings based on the record before him as a significant limitations which she opined were not supported by substantial evidence in the record.

### 5. Function-by-Function Analysis

Plaintiff argues that the ALJ erred in failing to perform a function-by-function analysis of his abilities and limitations.  Dkt. No. 12 at 16-17.  Defendant contends that given the detailed analysis of plaintiff's functional limitations and restrictions, which is supported by substantial evidence, and the application of proper legal standards, a function-by-function analysis is unnecessary.  Dkt. No. 13 at 10.  The Court agrees with the Commissioner.

> Pursuant to the Social Security Regulations, an ALJ's assessment of the claimant's RFC must include a function-by-function analysis of the claimant's functional limitations or restrictions and an assessment of the claimant's work-related abilities on a function-by-function basis.  With regard to physical limitations, this means the ALJ must make a function by function assessment of the claimant's ability to

> sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch.

Walters v. Astrue, No. 11-CV-640 (VEB), 2013 WL 598331, at *3 (N.D.N.Y. Feb. 15, 2013) (citations omitted).

However, remand is not required simply because the ALJ failed to conduct a function-by-function analysis. Holste v.Colvin, No. 15-CV-582 (FPG), 2016 WL 3945814, at *4 (W.D.N.Y. July 19, 2016). This Court has previously concluded that an "ALJ's failure to provide a function-by-function analysis might constitute harmless error, provided that the absence of the analysis did not frustrate meaningful review of the ALJ's overall RFC assessment." Goodale v. Astrue, 32 F. Supp. 3d 345, 357 (N.D.N.Y. 2012); see also Warthan v. Comm'r of Soc. Sec., No. 16-CV-36 (GTS), 2017 WL 79975, at *11 (N.D.N.Y. Jan. 9, 2017).

The ALJ's determination "affords an adequate basis for meaningful judicial review, applies the proper legal standards, it is supported by substantial evidence such that additional analysis would be unnecessary or superfluous." Cichocki v. Astrue, 729 F.3d 172, 177 (2d. Cir. 2013). Thus, although a function-by-function analysis would have been preferable, given the detailed decision of the ALJ, the Court finds that the ALJ's failure to conduct a function-by-function analysis does not warrant remand.

### 6. Credibility

Plaintiff contends that the ALJ erred in assessing his credibility by failing to consider his good work history. Dkt. No. 12 at 15. The Court would note that, contrary to plaintiff's argument, the ALJ specifically addressed plaintiff's good work history in his decision. T. at 19. The decision clearly states that the ALJ noted that "claimant worked

as a supervisor, electronics production (DOT #726.130-010) from February 1994 until April 2012. This includes 13 years of work at the substantial gainful activity level." T. at 14. The ALJ's explicit reference to plaintiff's 13 years of employment at the same location reflects his recognition of plaintiff's good work history. Id.

Although it appears true that plaintiff had a good work history, and "a good work history may be deemed probative of credibility,' it remains 'just one of many factors' appropriate considered in assessing credibility.'" Campbell v. Astrue, 465 F. App'x 4, 7 (2d Cir. 2012) (quoting Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998)). Thus, a claimant's good work history is not, alone, sufficient to accord substantial credibility to a claimant. Therefore, an ALJ's decision not to exclusively rely on a claimant's good work history is not reversible error. Campbell, 465 F. App'x at 7 (citing Wavercak v. Astrue, 420 F. App'x 91, 94 (2d Cir. 2011)).

Accordingly, the ALJ did not commit legal error as he properly considered the plaintiffs good work history, and his decision not to rely solely on plaintiff's good work history in assessing his credibility does not amount to reversible error.


### III. Conclusion

Having reviewed the administrative transcript and the ALJ's findings, for the reasons stated herein, the Court concludes that the Commissioner's determination is supported by substantial evidence.

**WHEREFORE**, for the reasons stated above, it is hereby

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) be **GRANTED**, and it is further

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 12) be

**DENIED**, and it is

**ORDERED**, that copies of this Decision and Order be served on the parties.

**IT IS SO ORDERED.**

Dated:  March 28, 2017
         Albany, New York

Christian F. Hummel
U.S. Magistrate Judge